MaddeN, Judge,
delivered the opinion of the court:
Plaintiff is suing to recover extra costs of performance of a levee construction contract with the defendant, caused by the defendant’s insistence on compliance with the minimum wage and maximum hour provisions of a Code of Fair Competition promulgated under Title I of the National Industrial Recovery Act. It is plaintiff’s position that compliance with the Code was not required by the contract.
The invitations to bid on a contract for the construction of Bayou Fordoche-Lottie Levee were issued by the District Engineer at New Orleans May 11, 1935, and specified May 31, 1935, as the date on which bids would be opened. The invitation required that the bid contain the following statement:
It is hereby certified that the undersigned is complying with and will continue to comply with each approved Code of Fair Competition to which it is subject, and if engaged in any trade or industry for which there is no approved Code of Fair Competition, then as to such trade or industry it has become a party to and is complying with, and will continue to comply with, an agreement with the President under Section 4 (a) of the National Industrial Recovery Act.
The contract specifications contained the following-provision :
36. Gode Compliance. — The contractor agrees that he will comply with each approved Code of Fair Competition to which he is subject and if engaged in a trade or industry for which there is no approved Code of Fair Competition, then, as to such trade or industry,, with an agreement with the President under Section 4 (a) of the National Industrial Recovery Act.
*145 The United States shall have the right to cancel this contract for failure to comply with this provision, and make open market purchases or have the work called for by this contract otherwise performed at the expense of the contractor.
Prior to the filing of plaintiff’s bid, and on May 27, 1935, the Supreme Court of the United States rendered its decision that Title I of the National Industrial Recovery Act was unconstitutional.[1] Plaintiff’s bid was dated May 20, 1935, but the bid price was not inserted until May 30, 1935, three days after the decision of the Supreme Court. Plaintiff assumed that the requirement of compliance with the Codes would not be enforced and figured its price without regard to the minimum wage and maximum hour provisions of the applicable code, the Code of Fair Competition for the Construction Industry.
Plaintiff presented its bid on May 31, 1935, the date specified in the invitation. Its bid was the low bid and was accepted by the defendant. On June 17, 1935, three copies of the contract were sent to plaintiff for plaintiff to sign and return, which it did. On June 28, 1935, the contracting officer forwarded to plaintiff a copy of the contract signed by both parties, for plaintiff to keep. Attached to the document was a typewritten substitution for paragraph 36 of the specifications, which had not accompanied the paper at the time plaintiff signed it. So far as here material, it provided as follows:
No employee shall be paid less than the rate of 40 cents per hour which must not be construed as establishing a minimum rate of pay for other than common or unskilled labor * * *; and provided further that such provision shall not be construed to authorize reduction in existing rates; and provided further that no employee shall be permitted to work in excess of forty (40) hours per week or in excess of eight (8) hours in any one calendar day.
Plaintiff did not notice that this statement had been attached until about July 2, 1935, when at the request of the office of the district engineer plaintiff returned the contract *146 to his office and the typewritten statement was removed from it.
Plaintiff began performance of the work on June 24,1935, and did not comply with the code requirements as to wages and hours, paying its men 25 to 30 cents per hour for common labor instead of the 40 cents required by the code, and working them without regard to the 8 hour day and 40 hour week maximum set by the code. July 9, 1935, plaintiff wrote to the district engineer informing him that it believed compliance with the code was not required in view of the SchecMer decision and that it was not following the code scale of hours and wages, and asking his advice. He ruled that plaintiff was obliged by the terms of its contract to adhere to the code rates and this ruling was affirmed on appeal by plaintiff to the Chief of Engineers. Plaintiff was advised that it would not be paid for work performed unless it complied with the code provisions concerning wages and hours, and, under protest, it complied.
Two of the unsuccessful bidders had submitted with their bids statements making a reduction in the amount of the bid price if the code should not be enforced. Plaintiff raised no question, however, until after its bid had been accepted.
The defendant maintains that plaintiff contracted to comply with the wage and hour provisions of the Construction Industry Code and that the agreement was in no way affected by the invalidity of Title I of the National Industrial Recovery Act. Plaintiff, on the other hand, relying on the wording of paragraph 36 of the specifications, asserts that in view of the SchecMer decision, there was no “approved” code to which it was “subject” since the court had disapproved all codes and held that no persons were subject to the codes.
We think that plaintiff’s promise, when it said it would obey the labor provisions of the code to which it was subject, was a promise to comply with these codes as applicable law. By so promising, a contractor added to his legal obligations by giving the government rights ex contractu in addition to whatever sanctions, criminal or otherwise, other *147 employers may have been subject to. But we think that the scope of the contractual obligation was not intended to be broader than the scope of the legal obligation. If, laying aside the question of constitutionality, the Recovery Act which was the charter for the codes had been repealed, or if the Code Authority had set a lower code standard, or a higher one, we do not think that the government could have validly claimed that plaintiff was bound contractually to the code provisions as they existed at the time plaintiff was invited to bid, or prepared its bid, on the contract, or that plaintiff could have properly refused to comply with a higher standard set by the Code Authority on the ground that its promise was based on the legal effect which the codes had had at the time it prepared its bid. In short, plaintiff’s promise was one which would become more onerous, or less so, or completely ineffective, as the legal effect of the codes varied. It was not a static obligation.
When the Schechter case was decided, the codes became legally ineffective. No one was “subject” to them any longer. The possibility that the code standards might be changed to make them less burdensome to plaintiff, or more so, than they were at the time plaintiff prepared its bid was gone. If the government desired to substitute in the contract a fixed standard of wages and hours instead of the formerly flexible one of the code, it might be expected to say so. That this thought apparently occurred to some now unidentifiable person in the office of the district engineer is shown by the incident of the attachment to and early removal from plaintiff’s copy of the contract of the typewritten substitute for paragraph 36 of the specifications. We think that if more was expected of plaintiff than that it obey the law of the codes, the defendant, which drafted the contract, should have made that expectation clear. It cannot even be said in extenuation that the matter was not drawn to the attention of the defendant’s agents, for two of the bidders whose bids were before those agents when plaintiff’s bid was considered and accepted had made alternative bids which must have drawn attention to the need for clarification of the contract in view of the ¿Schechfer decision.
*148 We conclude that plaintiff was not bound by the contract to pay any specific minimum wage, but that it was free to hire its labor for what it could get it for. The defendant’s threat to withhold payments due under the contract if plaintiff exercised that privilege was intended to have, and did have, the effect of coercing plaintiff into foregoing the privilege. As a consequence, we have found that plaintiff expended $17,287.18 more for wages than it would otherwise have done.
The defendant urges that plaintiff has not proved what the prevailing wages were during the period of plaintiff’s performance of the contract, and hence has furnished us no basis for determining the difference between the wages plaintiff in fact paid and those it would have paid, absent the defendant’s coercion. We think the evidence on this question is adequate. It shows what wages plaintiff did pay in the early weeks of its performance before it was required to pay the “code” wages. It shows that there was no substantial fluctuation in the prevailing wage rates during the period. It shows that the defendant itself, during the period of plaintiff’s performance, was hiring labor on nearby work at 25 cents per hour which is what plaintiff claims it could have secured labor for if it had been permitted.
Plaintiff is entitled to recover $17,287.18. It is so ordered.
Jones, Judge; Whitakek, Judge; Littleton, Judge; and Whaley, Ohief Justice, concur.

 Schechter Poultry Gorp. v. United States, 295 XT. S. 495.